274 U.S. 188 (1927)
ROAD IMPROVEMENT DISTRICT NO. 1 OF FRANKLIN COUNTY, ARKANSAS, ET AL.
v.
MISSOURI PACIFIC RAILROAD COMPANY.
No. 38.
Supreme Court of United States.
Argued April 19, 1926.
Decided April 18, 1927.
APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.
*189 Mr. Dave Partain, with whom Messrs. G.C. Carter and Heartsil Ragon were on the brief, for appellants.
Mr. Thomas B. Pryor, with whom Mr. Edward J. White was on the brief, for appellee.
Mr. JUSTICE VAN DEVANTER delivered the opinion of the Court.
This is a suit to annul an assessment of benefits accruing to a railroad from the improvement of a public road in Franklin County, Arkansas.
*190 The improvement was undertaken by a road district created for the purpose by an act of the state legislature directing that the cost be distributed over the lands, railroads and other real property within the district, in the form of special taxes measured by benefits received. Act 588, Special Road Acts 1919. The benefits were to be assessed by the district's assessors; and any owner aggrieved by their action was to have a right for twenty days to sue in a court of competent jurisdiction to set aside the assessment against his property. Otherwise it was to be " incontestable either at law or in equity."
The assessors originally assessed the benefits to the railroad at $54,062.00; and the railroad company in due time brought this suit to annul that assessment  on the grounds, among others, that it was plainly arbitrary and unreasonably discriminatory and therefore in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.
While the suit was pending the state legislature confirmed the assessments, specifically including that against the railroad, and authorized additional assessments, to be made conformably to the first act, to meet the cost of proposed changes in the width of the road-bed and in other features of the improvement. Act 626, Special Acts 1921. The proposed changes in the plans were made and additional assessments ensued. In this way the total assessment against the railroad came to be $75,686.00. The legislation passed an act confirming and approving the additional assessments, again specifically including that against the railroad. Act 109, Special Acts 1923. In supplementary bills, filed by the court's leave, the plaintiff set forth the additional assessment and the legislative confirmations, and challenged their validity on the same grounds that were advanced against the original assessment.
*191 On the hearing much evidence was produced; and the District Court found that the assessment against the railroad was plainly arbitrary and unreasonably discriminatory, and on that ground entered a decree setting it aside and enjoining the defendants from attempting to collect any tax based thereon. The Circuit Court of Appeals concurred in the finding and affirmed the decree. 2 F. (2d) 340.
The defendants bring the case here, their contentions being, (a) that the legislative confirmation of the assessment is controlling; (b) that the court below erred in finding that the assessment was plainly arbitrary and unreasonably discriminatory; and (c) that if the assessment was excessive, either in itself or when compared with the assessments against other property, it should be not wholly set aside but reduced to the extent of the excess.
There can be no doubt that the legislative confirmation placed the assessment on the same plane as if it were made by the legislature, and thereby cured any mere irregularities on the part of the assessors; but, as the legislature could not put aside or override constitutional limitations, the confirmation did not prevent inquiry into the alleged violation of such limitations.
If, as found by the courts below, the assessment was plainly arbitrary and unreasonably discriminatory, it was in violation of both the due process and the equal protection clauses of the Fourteenth Amendment; so we turn to the complaint of that finding. As the courts below concurred in the finding on successive examinations of the evidence it should be accepted by us unless shown to be clearly erroneous. Washington Securities Co. v. United States, 234 U.S. 76, 78; Baker v. Schofield, 243 U.S. 114, 118; United States v. State Investment Co., 264 U.S. 206, 211; Norton v. Larney, 266 U.S. 511, 518.
The road district extends across Franklin County from east to west along the Arkansas River and is five or six *192 miles wide. The public road which is being improved traverses the district from east to west, is 24 miles long, practically parallels the railroad and touches the same towns. The improvement consists in reducing curves and grades, widening the road-bed and giving it a rock base and hard surface adapted to use at all seasons by all kinds of vehicles, whether drawn by animals or propelled by motors. The road is intended to be part of a projected hard-surface highway extending from Little Rock to Fort Smith, as the railroad does. The area of the road district is 67,000 acres and that of the railroad right of way therein is 565 acres, or eight-tenths of one per cent. of the whole. The benefits assessed to property in the district aggregate $575,421.35, of which $75,686.00, or 13.2 per cent., is assessed to the railroad.
The assessment to the railroad is not based on real property alone, but also on rolling stock and other personalty valued at $52,465.00, while all other assessments are confined to real property. In this there is an obvious and unreasonable discrimination. Further discrimination is said to be shown by testimony indicating that the assessors fixed the benefits to the railroad on a mileage basis regardless of area, and as to other property proceeded solely with regard to area. But this testimony must be put aside by reason of the legislative adoption of the assessments. The modes in which the assessors arrived at the amounts assessed were not shown on the assessment roll or communicated to the legislature; so the question of discrimination must be determined independently of the theories and processes of the assessors, as if the assessments were made directly by the legislature.
Most of the testimony is addressed to the questions whether and how far the railroad will be benefited by the intended improvement of the parallel public road. Some witnesses are of opinion there will be no benefit, and a *193 few that there will be great benefit. These are extreme views and are weakened, rather than supported, by further statements of the same witnesses. Other testimony in substantial volume, coming from witnesses informed by observation and experience, is to the effect that, while an increase in particular traffic with accompanying revenue reasonably may be expected, it will be less than would be realized if the highway extended away from the railroad and reached localities theretofore without such a road; that, unlike such a lateral feeder, the parallel road reaching the same towns as the railroad will through its ready use by motor-driven vehicles withdraw from the railroad much of the less-than-car-load freight between these towns, and much of the passenger traffic between them; that such has been the actual result in similar situations along this and other railroads in Arkansas and other States, specific instances being described; and that the loss to this railroad in the instances described has ranged from 50 to 90 per cent. of such local traffic and compelled a cessation of part of the service to which it was incident. The successful competition of motor trucks in these situations is explained on the grounds that they do not bear the cost of constructing and maintaining the roadway, and are able to receive and deliver freight at the street door and to relieve their patrons from drayage charges. The view that the improved road will be of mixed benefit and detriment to the railroad is not confined to the plaintiff's witnesses but shared by informed witnesses called by the defendants. One of these, a member of the State Highway Commission and familiar with the particular situation and the development in the locality, testifies: "Q. What in your opinion is the effect of building this highway upon the revenue of the Missouri Pacific Railway? Will it be a detriment to it, or will it not be a benefit? A. Well from some standpoints a benefit, *194 and from others perhaps a detriment, but as a whole perhaps a benefit."
From all the testimony we think there is ample ground for believing that the improved road will lead to an increase in the traffic and revenue of the railroad, as respects freight moving in car-load lots and passengers travelling considerable distances, but that the benefit from this will be cut down by a substantial loss in local freight and passenger traffic attracted to motor-driven vehicles moving over the improved road. That such a loss in local traffic usually ensues when hard-surface roads adapted to use by motor-driven vehicles are constructed practically parallel to railroads is not only shown by the testimony but is common knowledge. It received distinct recognition in the President's message of December 8, 1922, to Congress.
We think it also appears from the testimony that the increase in revenue reasonably to be expected will be greater than the loss, but that the excess will not be such as to justify an assessment of benefits of $75,686.00 or more than a small fraction of that sum. Indeed, on the present showing, we should regard an assessment in excess of $15,000.00 as passing the outside limit of reasonable judgment and plainly arbitrary.
Our conclusion is that the assessment against the railroad is unreasonably discriminatory in so far as it is based on personal property, and in this respect violates the equal protection clause of the Fourteenth Amendment, and that it is otherwise so excessive as to be a manifestly arbitrary exaction and in violation of the due process of law clause of the same amendment. In these respects the finding and holding below are well grounded.
It follows that the present assessment is invalid and an injunction should be granted against its enforcement. The District Court so decreed. But as, on the present showing, it appears that an assessment of some benefits  *195 in an amount certainly below $15,000.00  would be justified, the way should be left open for making a new or revised assessment. The defendants ask, if the present assessment be held excessive, that it be reduced in this suit to a proper sum. But to this we do not assent. The state statute commits the assessing of benefits to a special non-judicial board of assessors, and authorizes that board, when requested by the commissioners of the district, to revise their assessments by "increasing or diminishing the assessment against particular pieces of property as justice requires." Act 588, § 10, Special Road Acts 1919. The better course is to leave the making of a substituted or revised assessment to that board. The decree will be modified by including a provision that is without prejudice to the lawful revision of the assessment conformably to the state statute and not exceeding $15,000 in amount.
Decree modified and affirmed as modified.